IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BUZGON DAVIS t/a BUZGON DAVIS   :
LAW OFFICES, and YOKADA, INC.   :
       Plaintiffs   :
              :   CIVIL NO. 1:CV-12-1241
   vs.         :
              :   (Judge Caldwell)
PEERLESS INDEMNITY   :
INSURANCE CO.,   :
       Defendant   :

*M E M O R A N D U M*

I.  *Introduction*

      The plaintiffs, Buzgon Davis, t/a Buzgon Davis Law Offices, and Yokada, Inc., filed this lawsuit against defendant, Peerless Indemnity Insurance Co. Yokada leases business premises to Buzgon Davis, and Peerless provided insurance to Buzgon Davis for the premises. The complaint makes two causes of action under Pennsylvania law. The first one is for breach of contract, alleging that Peerless has refused to pay for losses covered under the policy of insurance, specifically, expenses incurred for debris removal and losses suffered on personal effects, when a sump pump breakdown caused water damage to the premises. The second cause of action is under 42 Pa. Con. Stat. Ann. § 8371 for a bad-faith refusal to pay under the policy. The case was filed in state court but removed here under our diversity jurisdiction. *See* 28 U.S.C. §§ 1441(a) and 1332(a).

We are considering the parties' cross-motions for summary judgment. Peerless argues there is no coverage under the policy for debris removal and personal effects because Defendant has already paid out the policy limits under the relevant policy provision, an endorsement that increased the amount of coverage for losses resulting from the backup of sewers or drains to $100,000. It also asserts that since there was no coverage, it did not act in bad faith in denying the claims. Conversely, Plaintiffs argue there is coverage, that we should enter summary judgment in their favor on the breach-of-contract claim, enter summary judgment on liability on the bad-faith claim and leave the amount of damages on the latter claim for the fact finder.

II.  *Standard of Review*

Under Fed. R. Civ. P. 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Meditz v. City of Newark,* 658 F.3d 364, 369 (3d Cir. 2011)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)).

With this standard in mind, we set forth the background to this litigation as established by the summary-judgment record.

III.  *Background*

A.  *The Policy Provisions*

Peerless issued Buzgon Davis a "Commercial Protector" or "Businessowners" insurance policy, effective from May 21, 2011, through May 21, 2012. The policy provisions pertinent to the instant dispute are as follows.

Peerless agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Doc. 22-2, ECF p. 42).  "Covered Property" included 'Buildings" and "Business Personal Property." (*Id.*).  "Covered Causes of Loss" are described as "Risks of direct physical loss unless the loss" is listed in the exclusions section or limited as described in the limitations section. (*Id.*, ECF p. 43).

The policy contains an exclusion relating to "Water," excluding coverage for loss caused by "Water that backs up or overflows from a sewer, drain, or sump," but has an exception for coverage as "provided in the Additional Coverage - Back up of Sewers and Drains." (*Id.*, ECF p. 66, Section I.B.5.g.3 of the policy).  Buzgon Davis had this additional coverage. (*Id.*, ECF p. 53, Section A.5.p).  Modified by an endorsement, and as set forth in the endorsement, this additional coverage insured against "direct physical loss caused by water . . . [w]hich enters into and overflows from within a sump pump" with a limit of $10,000. (*Id.*, ECF p. 103, "Pennsylvania Changes").

-3-

Under the "Additional Coverages" section, the policy also covered debris removal.  In pertinent part, the provision read:

a.  Debris Removal

(1) Subject to paragraphs (3) and (4), we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. . . . .

. . . .

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to Paragraph (a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

(4) We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus that amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

> Therefore, if Paragraphs 4(a) and/or 4(b) apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

(*Id.*, ECF pp. 44-45).

The policy has a section dealing with "Coverage Extensions." One provision, dealing with "Personal Effects," provides that: "You may extend the insurance that applies to business personal Property to apply to personal effects" with a limit of $2,500. (Id., ECF p. 57).

The "Commercial Protector Extension Plus Endorsement" revised the limits on certain coverages to a "$100,000 Blanket Limit." (*Id.*, ECF p. 104). It provided a list of "Coverages included in the Blanket Limit" and "Coverages not included in the Blanket Limit." The coverages included in the "Blanket Limit" were: (1) "Back-up of Sewers or Drains (including resultant Business loss or resultant Extra Expenses incurred)"; (2) "Personal Property Off Premises"; (3) Valuable Papers and Records"; (4) "Accounts Receivable"; (5) "Computer Equipment and Software"; and (6) Fine Arts." (*Id.*). The language of the Extension Plus Endorsement confirmed these revised limits by stating that the limits of insurance for these coverages were "deleted and replaced" with a limit of $100,000 "in any one occurrence." (*Id.*, ECF p. 105).

Among others, a coverage not included in the "Blanket Limit" was "Personal Effects." The revised limit for personal effects was $5,000, increased from $2,500. (*Id.*,

ECF pp. 105, 106).  Debris removal did not appear on either list, either as included in the Blanket Limit or not included in that limit.

### B.  *The Claim-Handling Process*

During the overnight hours of September 7-8, 2011, a sump pump failed at the insured premises, causing water damage.  (Doc. 15, Pls.' Mot. for Summ. J. ¶ 1; Doc. 26, Def.'s Answer thereto).  Christine Posey, an independent adjuster, handled the claim for Defendant.  She was supervised by Michael Unti.  Posey was an independent contractor hired to handle an influx of claims expected because of two storms coming through the area, Hurricane Irene and tropical Storm Lee.  (Doc. 19-2, Unti Dep., p. 9). Posey had at least twenty years' experience in claims adjusting.  (Doc. 19-3, ECF p. 4-11).  Unti had worked for Peerless and related entities for sixteen years.  (Doc. 19-2., ECF p. 4).

On September 21, 2011, Defendant made an advance payment of $30,000. (Doc. 22-7, Def.'s Ex. F).  Defendant then determined that the damage to Buildings and Business Personal Property exceeded $100,000.  (Doc. 15, Pls.' Mot. for Summ. J. ¶ 3; Doc. 26, Def.'s Answer thereto).  On October 25, 2011, Posey wrote a letter to Scott Grenoble, a lawyer with Buzgon Davis, informing him of that determination and that an additional payment of $70,000 would be made, for a total of $100,000.  She also wrote that this ended Peerless's obligation under the policy, citing the blanket limit of $100,000 in the Extension Plus Endorsement for losses resulting from back-ups of sewers and drains.  (Doc. 22-12, Def.'s Ex. K).

On the same day, Grenoble responded by letter, saying that the debris removal provision expressly contemplated additional coverage beyond the $100,000 blanket limit. He also asserted coverage remained for personal effects. (Doc. 22-13, Def.'s Ex. L). By e-mail, dated October 26, 2011, at 7:23 a.m., Posey forwarded Grenoble's letter to Unti and asked for advice on how to proceed. (Doc. 15-6, ECF p. 1, Pls.' Ex. 4). At 7:58 a.m., Unti responded that she should write another letter and that she should cite (in part) the language in the Extension Plus Endorsement limiting coverage in any one occurrence to $100,000 for "Back-up of Sewers or Drains (including resultant Business loss or resultant Extra Expenses incurred)." (*Id.*). By letter, dated October 27, 2011, Posey replied to Grenoble by quoting the relevant policy provisions (except for the debris removal one) and concluding that Peerless had no further obligation to Plaintiffs because it had paid the $100,000 blanket limit in the Extension Plus Endorsement for any one occurrence. (Doc. 22-15, Def.'s Ex. N).

On February 21, 2012, a Buzgon Davis lawyer wrote to Posey that the firm had finally completed clean-up and reconstruction of its offices. He also reiterated the firm's position that Peerless still owed it coverage for debris removal and personal effects. By letter, dated March 21, 2012, Unti reaffirmed Peerless's denial of coverage. In doing so, he cited section I.B.g.3 of the policy, the exclusion section, having two effects: (1) limiting coverage under the debris removal clause and the personal effects clause to the $100,000 blanket limit in the Extension Plus Endorsement for back-ups of sewers or drains; and (2) excluding coverage for debris removal and personal effects.

In regard to Plaintiffs' claim, Posey testified at her deposition: (1) that she and Unti "had discussed the policy intensively," (Doc. 19-3, ECF p. 22); (2) that they had discussed before Peerless's October 25 letter whether the policy provided additional coverage for debris removal beyond the $100,000 blanket limit, (*id.*, ECF pp. 29-30); and (3) that they had the relevant policy provisions in front of them while they were discussing this issue. (*Id.*, ECF p. 31).

Before sending Grenoble's October 25 reply letter to Unti, she had already decided there was no debris removal coverage, based on "ongoing discussions regarding the policy," and Unti agreed. (*Id.*, ECF pp. 33-34). It was her belief that there was no further coverage once the $100,000 limit had been met, even if the debris removal provision gave specific examples when debris removal costs would be covered even when limits of coverage had nonetheless been reached. (*Id.*, ECF p. 38).

She does not recall if she went over the debris removal clause again after receiving Grenoble's reply letter; she had gone over the policy "several times." (*Id.*, ECF p. 39). She read the letter, but because they had been reviewing the policy throughout the time she had been handling the claim, she concluded the policy had a $100,000 limit.

She had also read through the list of included and "not included" coverages in the Extension Plus Endorsement to see if debris removal was mentioned. She and Unti observed that debris removal was not on either list. She does not recall discussing the "significance" of this with Unti, but believed that there was no coverage for debris removal because the cause of the loss was a back-up for sewers and drains and the limit

in the Extension Plus Endorsement for that cause of loss was $100,000. (*Id.*, ECF p. 41-42).

Unti testified at his deposition that he did talk with Posey and gave his approval before the $30,000 advance was sent, but cannot recall if he had discussed Plaintiffs' claim with her earlier than that. (Doc. 19-2, ECF p. 18). He does not recall how much time he would have spent reviewing the matter at that time. (*Id.*, ECF p. 22). He would have approved the October 25 decision to pay the $100,000 limit, and guesses that they probably had a conversation about the documents, that he took a look at the documents and that he agreed with her recommendation. (*Id.*, ECF pp. 22-23). He does not recall if up to and including that date they discussed coverage for debris removal in excess of the $100,000 limit. (*Id.*, ECF p. 23). He has a difficult time recalling specific conversations about claims because there were many claims being made at that time. (*Id.*, ECF p. 23).

Before Posey sent him the Grenoble October 25 reply letter, he does not recall any specific conversation about coverage issues. (*Id.*, ECF p. 25). He might have talked with his supervisor about a response to the letter but does not recall if he did. (*Id.*, ECF p. 26). His supervisor approved the October 27 response. (*Id.*). He does not recall if he reviewed the policy language before telling Posey how to respond, or what else he might have done, but he is certain he would have reviewed the policy language. (*Id.*, ECF p. 27-28).

Unti recalls talking to his supervisor about the debris removal provision before his supervisor approved the response. (*Id.*, ECF p 29). Before he sent out his March 21 letter, they would have had an opinion from an attorney about coverage. (*Id.*, ECF p. 32). His supervisor would have approved the letter, but Unti does not recall any conversations they might have had. (*Id.*, ECF pp. 39, 41). Any time an insured disagrees about coverage, he would have discussed the issue with his supervisor and discussed the merits of the insured's case. (*Id.*, ECF pp. 41-42).

IV.  *Discussion*

A.  *The Policy Provides Coverage for Debris Removal  and Personal Effects Expenses In Excess of the $100,000 Blanket Limit in the Extension Plus Endorsement*

In Pennsylvania, the interpretation of an insurance policy is a question of law, *Kvaerner Metals Div. v. Commercial Union Ins. Co.*, 589 Pa. 317, 331, 908 A.2d 888, 897 (2006), and is a function performed by the court. *Minnesota Fire & Cas. Co. v. Greenfield*, 579 Pa. 333, 344, 855 A.2d 854, 861 (2004). Insurance policies are contracts, and the parties's intent when they made the agreement governs its interpretation. *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 517 (3d Cir. 2012)(applying Pennsylvania law). Since an insurance policy is a contract, the principle of *ejusdem generis* applies when appropriate. *See id.* at 520. Additionally, any ambiguity in the policy is construed against the insurance company as the drafter. *American & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584, 608, 2 A.3d 526, 540 (2010).

In moving for summary judgment, defendant Peerless argues there is no coverage for debris removal or personal effects because those claims were subject to the $100,000 limit for sump pump back-up in the Extension Plus Endorsement. The argument has two parts.

The first part greatly depends on the fact that the policy starts out with a "Sewers or Drains Exclusion," as Defendant phrases it. This clause begins by excluding coverage for loss caused by "Water that backs up or overflows from a sewer, drain, or sump," (Doc. 22-2, ECF p. 66, Section I.B.5.g.3 of the policy, the exclusion relating to "Water"), but has an exception for coverage "as provided in the Additional Coverage- Back up of Sewers and Drains." (*Id.*). Buzgon Davis had this additional coverage, coverage against "direct physical loss caused by water . . . [w]hich enters into and overflows from within a sump pump" with a limit of $10,000. (*Id.*, ECF p. 103, "Pennsylvania Changes" endorsement). This coverage is extended to $100,000 by the Extension Plus Endorsement.

In Defendant's view, there is no coverage for debris removal because the "Sewers or Drains Exclusion" excludes damages caused by sump pump back-up except as provided in the additional coverage, limited to $100,000 by the Extension Plus Endorsement. Once that limit was reached, Defendant maintains there simply was no longer any coverage. Defendant acknowledges that under the debris removal provision, it agreed to "pay [the insured's] expense to remove debris of Covered Property caused by

or resulting from a Covered Cause of Loss," (*id.*, ECF p. 44, A.5.a(1)), but maintains there was no longer a Covered Cause of Loss after the $100,000 limit was reached.

We disagree.  As Plaintiffs argue, this analysis ignores the language of the debris removal provision, which clearly provides coverage for debris removal expense in addition to any limits on any covered cause of loss.  The pertinent provision is subparagraph a(4), which ultimately controls the coverage provided.  It reads as follows:

> (4) We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:
>
> (a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.
>
> (b) The actual debris removal expense exceeds 25% of the sum of the deductible plus that amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.
>
> Therefore, if Paragraphs 4(a) and/or 4(b) apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

(*Id.*, ECF pp. 44-45).  In this provision, Peerless clearly obligates itself to pay up to $25,000 in debris removal expense plus the limit of insurance on the covered property.  Defendant is therefore wrong in asserting that the "Sewers or Drains Exclusion" operates to include debris removal expense in the $100,000 limit.

Defendant attempts to close this gap in its analysis with the second part of its argument. The Extension Plus Endorsement provided a list of "Coverages included in the Blanket Limit" and "Coverages not included in the Blanket Limit." Three of the coverages included in the "Blanket Limit" were: "Back-up of Sewers or Drains," including "resultant Business loss or resultant Extra Expenses incurred." Defendant argues that under the principle of *ejusdem generis*, debris removal coverage should be considered the same type of coverage as business loss or extra expenses and hence within the purview of coverage for sewers or drains, meaning that just like that coverage, debris removal coverage was subject to the $100,000 blanket limit.

We disagree. "Under the principle of *ejusdem generis,* '[i]t is widely accepted that general expressions such as 'including, but not limited to' that precede a specific list of included items should not be construed in their widest context, but apply only to persons or things of the same general kind or class as those specifically mentioned in the list of examples.'" *Post*, 691 F.3d at 520 (quoted case omitted). The Extension Plus Endorsement contains no general expression. Instead, it specifically lists different types of coverages either covered by the blanket limit or not covered by the blanket limit. Defendant therefore cannot invoke the principle of *ejusdem generis*.

We will therefore grant Plaintiffs summary judgment on liability on the contract claim.[1] Plaintiff has requested that we enter summary judgment on damages as

_____

[1]  Our ruling is in accord with *LGC Investments, Inc. v. Merchants Mut. Ins. Co.*, 2006 WL 1508708 (N.J. Super. Ct. App. Div. 2006). We note that the court there found the debris removal provision ambiguous, but the language in the instant case is materially different and clearer.

well, in the amount of $25,000, the maximum amount payable under the debris removal provision, given that Defendant has already paid the $100,000 limit for the damage to Buildings and Business Personal Property.  In support, Plaintiffs have submitted the amount that Buzgon Davis spent on debris removal, and demolition, a total of $29,464.77, which exceeds the maximum amount payable under the debris removal provision. (Doc. 15-10, Pls.' Ex. 8).

We cannot grant summary judgment on damages.  Defendant argues the debris removal provision only covers debris removal expenses, not expenses for demolition.  *See Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 63 (D.N.J. 2007)(applying New Jersey law).  Plaintiff does not argue against this position, and it appears that the ruling in *Zurich* is consistent with Pennsylvania law, so we will follow it here.[2]  Plaintiff may present its debris removal expenses at trial.[3]

Plaintiffs also seek coverage for loss of personal effects.  Defendant argues that there is no coverage for this claim, using the first part of its analysis described above.  Defendant asserts Plaintiffs can only recover for loss of personal effects when there is a

---

[2]  As in New Jersey, in interpreting an insurance policy, Pennsylvania courts also look to the dictionary definitions of ordinary words appearing in a policy.  *See Kvaerner Metals Div.*, *supra*, 589 Pa. at 332–33, 908 A.2d at 897.

[3]  Defendant has also argued from analogy to "extra expense" coverage, citing *George's Inc. v. Allianz Global Risks U.S. Ins. Co.*, 596 F.3d 989, 993 (8th Cir. 2010), that Plaintiffs are not entitled to costs for time spent by Buzgon Davis lawyers and support staff in removing debris.  Defendant says these are expenses that would have otherwise been incurred as salaries.  We disagree.  However, Defendant is free to contest the reasonableness of these items on other grounds.

covered cause of loss, but there was no longer a covered cause of loss after the $100,000 limit was reached.

We disagree. The Extension Plus Endorsement specifically lists this coverage as not being subject to the blanket limit (and increases that coverage to $5,000). We will enter summary judgment in Plaintiffs' favor for $1,500, the undisputed amount of loss for personal effects.

B. *The Bad Faith Claim*

"To recover for bad faith, 'a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim.'" *Post*, *supra*, 691 F.3d at 522 (quoted case omitted). Some motive of self-interest or ill-will is probative of the second element, but is not a necessary element of the claim. *Greene v. United Services Auto. Ass'n*, 936 A.2d 1178, 1191 (Pa. Super. Ct. 2007). The refusal to pay need not be fraudulent, and mere negligence or bad judgment is not bad faith. *Post*, *supra*, 691 F.3d at 523.

Since the standard of proof is clear and convincing evidence, that is the standard the plaintiff must meet to survive summary judgment. *Id.* "This heightened standard requires evidence 'so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith.'" *Id.* (quoted case omitted).

In moving for summary judgment on the bad faith claim, Defendant argues: (1) Plaintiffs cannot satisfy the first element of the claim because Defendant properly denied the claims; (2) even if there is coverage, Defendant's position that there was no coverage was reasonable, as evidenced by Plaintiff's argument that the policy language was at least ambiguous; and (3) Peerless's thorough investigation of the claims and even re-opening of the claim when Plaintiffs requested it negates a finding of bad faith.

We reject Defendant's first argument because we have already decided that there is coverage. We also reject its third argument. Although Plaintiff also makes an issue of Defendant's investigation (the inadequacy of it), this is not a case based on an inadequate investigation.[4] This case deals with the proper interpretation of the policy.

That leaves for consideration only whether Defendant's position was a reasonable one. Here, Defendant emphasizes Plaintiffs' argument on the coverage issue that the policy language was at least ambiguous.[5] Defendant maintains that if the language was ambiguous, this alone defeats the bad faith claim because an ambiguous provision is by definition one that one that has more than one reasonable interpretation, citing *Mitch's Auto Service Ctr., Inc. v. State Auto. Mut. Ins. Co.*, No. 10-3413, 2011 WL 5042480, at *7 (E.D. Pa. Oct. 24, 2011).

---

[4]  Bad faith can extend to the investigation of a claim.  *Post*, *supra*, 691 F.3d at 523.

[5]  The argument was that the Extension Plus Endorsement was ambiguous because debris removal coverage was not listed either in the coverages included in the blanket limit or in the coverages not included in the blanket limit.

We are not convinced that Plaintiffs' ambiguity argument is dispositive. We decided that the policy clearly required coverage, and Plaintiffs argued the same. The ambiguity argument was only a rebuttal to Defendant's argument concerning coverage.

It appears that this case must go to trial on the bad faith claim. Plaintiffs present a forceful argument for summary judgment as to liability on the claim, that Defendant did not engage their October 25 argument concerning coverage but simply and reflexively relied on the Extension Plus Endorsement $100,000 blanket limit. However, for a claim where negligence or bad judgment is not enough, a fact finder should normally resolve the issue. We also bear in mind that Plaintiff's burden is to show bad faith by clear and convincing evidence.

We will issue an appropriate order.


/s/William W. Caldwell
William W. Caldwell
United States District Judge


Date: May 16, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BUZGON DAVIS t/a BUZGON DAVIS : 
LAW OFFICES, and YOKADA, INC. :
        Plaintiffs :
              : CIVIL NO. 1:CV-12-1241
   vs. :
              :  (Judge Caldwell)
PEERLESS INDEMNITY :
INSURANCE CO., :
        Defendant :

*O R D E R*

    AND NOW, this 16th day of May, 2013, it is ordered that:

    1.  Defendant's motion (Doc. 20) for summary judgment is
denied.

    2.  Plaintiffs' motion (Doc. 15) for summary judgment is
granted as follows: (a) the motion is granted as to the
personal effects claim and the Clerk of Court shall enter
judgment in favor of Plaintiff and against Defendant in the
amount of $1,500; (b) the motion is granted as to liability on
the claim concerning the debris removal expenses.

    3.  In all other respects, the motion is denied.

                /s/William W. Caldwell
                William W. Caldwell
                United States District Judge